White v. Beem et al.

No. 8096.

WHITE v. BEEM ET AL.

INSTRUCTION.—Instructions, stating the law correctly when taken as a whole, will be upheld, though parts of them, separately considered, may be slightly inaccurate.

SAME.—Where a party desires specific instructions directing attention to points relied upon by him, he should, at the proper time, request such instructions as he deems necessary.

SAME.—*Intention.—Contract.—Practice.*—It is not improper to instruct the jury that they might look to the circumstances surrounding the transaction and to the intention of the parties at the time they entered into the contract. It is proper to direct the attention of the jury to the material and leading facts of the case, but not to assume the existence of controverted facts, nor to so state the facts as to present to the jury a one-sided view of the case, and thus mislead them.

From the Owen Circuit Court.

White v. Beem *et al.*

W. R. *Harrison,* I. H. *Fowler* and W. E. *McCord,* for appellant.

G. W. *Grubbs,* W. A. *Montgomery,* D. E. *Beem* and W. *Hickam,* for appellees.

ELLIOTT, C. J.—Appellant endorsed two notes for the accommodation of George C. White. The contest is as to his liability upon one of them, although the action is on both. There was evidence given on the trial tending to prove that appellees' immediate endorsers were engaged in the business of slaughtering and packing hogs, under the style of the "Pork House Company;" that the endorsers and the appellees were represented by the same general agent, and that this agent had full knowledge of the circumstances under which appellant endorsed the note. There was some evidence tending to prove that appellant was induced to become the accommodation endorser of George C. White, by the agreement of the Pork House Company to sell a large quantity of pork, belonging to White, then in their hands, and apply the avails to the payment of the note. No instructions were asked by either party, and the court, upon its own motion, instructed the jury in writing. The instructions read as follows:

"1st. If you find that, at the time of the execution of the note in suit by Stephen White, George White was principal therein and said Stephen endorsed for said George, and that at said time the said George had in the hands of the Pork House Company an amount of pork sufficient to pay said note, and find that the note in question was executed by said George to said Stephen, to be turned over to the said Pork House Company for money advanced to said George by said company, and for which said George was indebted to said company; and find that it was agreed by said Pork House Company, said George and said Stephen White, that, in consideration of the signing of the note by said Stephen, the Pork House Company would sell the pork and apply the proceeds of the sale upon said note; and further find that said

note was turned over to the Pork House Company, but that when said bank took said note it knew of the aforesaid agreement as to the payment thereof; and find that the pork has been sold by said Pork House Company, and that it brought sufficient to pay said note, then you should find for said Stephen as to said $3,600 note.

"2d. Before such a contract as the above could entitle the defendant Stephen to a verdict in his favor, you must find from the evidence that the Pork House Company was a party to such arrangement, that is, they consented to receive the note and hold and apply the proceeds of the sale of the pork on said note; an agreement between George and Stephen to that effect would not of itself be sufficient; the agreement of the Pork House Company would also be necessary. The note contains a promise to pay the face thereof and its interest in money. It requires the proof of an agreement on the part of the Pork House Company to look to the pork for payment of the note, so far as the same will discharge the note. It was the right of the Pork House Company to apply the proceeds of the pork of George in their hands to any indebtedness of defendant George they chose, so far as defendant Stephen was concerned, unless by contract they had bound themselves to apply it in a particular manner. In determining what was the real arrangement between the parties, or whether the Pork House Company made the agreement to apply the proceeds of the pork on the $3,600 note, you should look to the evidence relating to the circumstances surrounding the transaction, and in this connection you should consider what was the object of giving any security on the note, and whether it was the intention of all the parties to furnish any security additional to the pork in the hands of the company at that time. If the proceeds of the pork had been applied on the $3,600 note, it would have paid the note to the extent of the proceeds so applied, and would have discharged the mortgage to the same extent, so that if the proceeds of the pork had been sufficient

to pay the note, and had been applied in discharge of the same, the mortgage would, after such payment, be valueless except as to the other note described therein. A contract of the kind insisted upon by the said Stephen should be proved by a preponderance of the evidence directed to the proposition that when the parties met they, with a view to settling the terms upon which Stephen would execute the note in question, made the mutual agreement insisted upon. Mere casual remarks in regard to the ability of the principal to meet his obligation upon such note, or in regard to the probability of trouble arising to the defendant Stephen by reason of his endorsement thereof, would not be sufficient to establish such contract, unless it was in contemplation by the parties to contract in reference to the manner of payment of said note, or the remarks were such in terms as induced the defendant reasonably to accept and act on the same as a promise on the part of the Pork House Company to look to the pork as the primary fund for the payment of said note, and unless under the circumstances the agent of the Pork House Company, who, acting in the matter, was so situated and so acting as that, reasonably, he ought to have taken notice that the defendant Stephen signed said note with the understanding that it was to be so paid."

It is settled by repeated decisions that the instructions must be taken as a whole; and if, so taken, they express the law correctly, they will be upheld, although they may contain some slight inaccuracies. The appellant selects one or two sentences from the charge of the court and assails them with much energy, and, it must be said, with much force. If, however, counsel were entirely correct in their objections to detached parts of the instructions, it would not entitle them to a reversal, if the instructions, regarded as a whole, are correct.

It may be true that appellant was entitled to a more specific instruction upon some of the points touched by the charge of the court, but, as he did not ask a more specific statement, he is not in a situation to complain. Where a party desires spe-

White *v.* Beem *et al.*

cific instructions, directing attention to points relied upon by him, he should, at the proper time, request such instructions as he deems necessary.

It is urged against the instructions under examination, that they give undue prominence to some of the facts developed by the evidence. We do not think the instructions justly subject to this objection. It was not improper for the court to instruct the jury that they might look to the circumstances surrounding the transaction, and to the intention of the parties at the time they entered into the contract. It is proper to direct the attention of the jury to the material and leading facts of the case, but not to assume the existence of controverted facts, nor to so state the facts as to present to the jury a one-sided view of the case and thus mislead them.

It is argued that the clause in the second instruction which reads," If the proceeds of the pork had been applied on the $3,-600 note, it would have paid the note to the extent of the proceeds so applied, and would have discharged the mortgage to the same extent, so that if the proceeds of the pork had been sufficient to pay the note and had been applied in discharge of the same, the mortgage would, after such payment, be valueless except as to the other note described therein," gave the law incorrectly, and prejudiced the appellant. To fully understand the question here presented, it is necessary to state something more of the evidence than was given in the introductory part of the opinion. It was shown that the Pork House Company desired additional security from George White for advances made to him, as pork had greatly depreciated in value; that he proposed to execute to them a mortgage; that afterward he changed this proposition and proposed that the mortgage should be executed to his brother Stephen, and that he should endorse the note, and this proposition was accepted and acted upon.

It is unquestionably true that a principal may remain bound and the surety be discharged. There are many cases where the discharge of the surety in no manner impairs the obligation

of the principal. There are cases where a mortgage or note may remain effective against the principal and still be without force against the surety. These familiar doctrines are invoked by the appellant in support of his attack upon the instructions. We are not able to perceive how they supply him any assistance. It is not averred in the answer, nor shown by the evidence, that there was any agreement that the surety only should be released and the note and mortgage remain in force as to the principal. On the contrary, so far as there was any evidence at all touching the point, it tended to prove that the avails of the pork in the hands of the Pork House Company were to be applied to the payment of the note.

The appellant could only succeed by proving the allegations of his answer. A defendant can not plead one defence and defeat the action upon a distinct and different one. The code, liberal as it is, does not allow a party to adopt one theory in his pleadings, and by his evidence secure a recovery upon one essentially different.

If there was an agreement that the proceeds derived from the sale of the pork should be applied in payment of the note, then, as the jury were informed in the first instruction, appellant was entitled to a verdict; but he was not entitled to a verdict simply because the appellees applied the money realized from the sale to the payment of advances. A creditor is not bound to apply money which he has received from the sale of property upon which he has made advances, and upon which he has a lien, to the payment of a secured debt, unless there is some express or implied agreement to that effect. It might be the creditor's duty to apply the surplus remaining after the discharge of the lien to the payment of the secured debt, if he had knowledge that there was an agreement between the principal and surety to that effect, and if he knew that the surety was relying upon him to do so.

If the agreement was, as alleged in the answer, that the money derived from the sale of the pork should be applied to the payment of the note, then its application would discharge

the note. As the note which the mortgage secures is the principal, its full payment would extinguish the mortgage, which is but the incident.

The expression of opinion in casual remarks by the creditor as to the ability of the principal to meet his obligation, can not, in the absence of fraudulent concealment or false statements, be allowed to destroy the creditor's claim against the surety.

The judgment is affirmed.